# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

**IRIS BREAUX**                                    **CIVIL ACTION NO.**

**VERSUS**                                         **JUDGE:**

**ASSUMPTION PARISH SCHOOL BOARD**     **MAGISTRATE:**
**AND JEREMY COUVILLION**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## <u>COMPLAINT WITH JURY DEMAND</u>

**NOW INTO COURT,** through undersigned counsel, comes **IRIS BREAUX** (hereinafter, "Plaintiff"), an individual of the age of majority, domiciled in the State of Louisiana, Parish of Assumption, who respectfully represents as follows:

1.

This Court has original subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331, for the reason that this action arises under the laws of the United States, and specifically, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq*.  Further, this Court has supplemental jurisdiction over the claims arising under the laws of the State of Louisiana, pursuant to 28 U.S.C. §1367(A), for the reason that the state claims, and specifically, the Louisiana Employment Discrimination Law, LSA- R.S. 23-301, et seq. (Race Discrimination), Intentional Interference with Contractual Relations and Breach of Contract arise out of the same incidents giving rise to Plaintiff's federal claims and form a part of the same case or controversy.

2.

Made Defendants herein are:

A.     Assumption Parish School Board (hereinafter sometimes referred to as "APSB" or "the School Board"), which is a constitutionally or statutorily created political subdivision of the State of Louisiana, and has the capacity to sue and be sued. The School Board and its office are located in Assumption Parish, Louisiana; and,

B.     Jeremy Couvillion, individually and in his official capacity as the former Superintendent of Assumption Parish Schools. Mr. Couvillion is an individual of the age of majority, and is believed to be a resident and domiciliary of East Baton Rouge Parish, Louisiana.

3.

Plaintiff, an African-American female, hired as Principal of Belle Rose Middle School on July 1, 2015, located in Assumption Parish, Louisiana.

4.

Plaintiff's direct supervisor was Jessica Thibodeaux, a Caucasian female, Ms. Thibodeaux's supervisor was Jeremy Couvillion (hereinafter sometimes referred to as "Mr. Couvillion"). Mr. Couvillion is a Caucasian male. Ultimately, Ms. Breaux answered to Mr. Couvillion.

### *Allegations of Fact*

5.

Iris Breaux was hired as Principal of Belle Rose Middle School on July 1, 2015, by Tibby Martinez.  During the first three (3) years of Ms. Breaux's tenure as Principal of Belle Rose Middle School, she worked as an effective and loyal employee, receiving, at a minimum, satisfactory

annual performance evaluations despite the many challenges she was presented with at Belle Rose Middle School.

6.

Despite previously having approximately 150 students, Ms. Breaux received little support in her position as Principal of Belle Rose Middle School.  By way of exemplar only, for the 2018-2019 school year Belle Rose Middle School had an Assistant Principal serving the school only fifty percent of the time.  The Assistant Vice-Principal assigned to the school, Nicole Pipsair (hereinafter sometimes referred to as "Ms. Pipsair"), served both Belle Rose Middle School and Belle Rose Primary School, thereby leaving Ms. Breaux with support only fifty percent of the time.

7.

Additionally, Belle Rose Middle School had a janitor that was unable to perform her full duties part of the year because she was on leave.  Therefore, Ms. Breaux, her husband and her child were forced to go to the school on weekends and evenings to clean the school.

8.

On top of that, there were only three (3) paraprofessionals assigned to Belle Rose Middle School during the 2018-2019 school year, leaving it inadequately staffed and greatly increasing the adversity which Ms. Breaux faced.  But despite this, for the first three (3) years of her tenure when she worked under Tibby Martinez, she served successfully and without incident.

9.

Things changed during the 2018-2019 school year after Mr. Martinez stepped down and Mr. Couvillion took his place.  Mr. Couvillion selected Ms. Pipsair to serve as an Assistant Principal at the middle school.  Ms. Pipsair previously served as a reading facilitator at Belle Rose Middle School and Assistant Principal at Belle Rose Primary.  As the school year progressed, it

became clear to Ms. Breaux that Ms. Pipsair was no longer satisfied in her position as Assistant Principal and wanted Ms. Breaux's job. Ms. Pipsair had a tendency to commandeer conversations and, to put it politely, was blunt.

10.

By way of example, on October 12, 2018, Mr. Couvillion forwarded Ms. Breaux, and other principals, an email entitled "12 Annoying Characteristics of a Horrible Boss" in clear reference to the manner in which Ms. Breaux was overseeing her white subordinate. The bonus advice at the conclusion of the email states as follows:

> *"THE WORST BOSSES TEND TO NEGLECT TEAM BUILDING. The worst type of Boss does not understand how important company culture is to company profits. If you treat your employees with respect, and make them happy, they will work harder for you, and your business will be more successful."*

11.

Ms. Pipsair's disruptive and disrespectful behavior culminated on October 25, 2018, when she called a group African American special needs students "ghetto savage thugs", a fact acknowledged by Ms. Pipsair.

12.

On the same day of Ms. Pipsair's racist comments, Ms. Breaux received an email from a parent of one of the victims, Sharnell Shaw, complaining of Ms. Pipsair's inappropriate and racist comments. Ms. Shaw wrote that she was aware that Ms. Pipsair told the students, "I'm tired of y'all ghetto ways, y'all need to get it together." Ms. Shaw continued, "I don't care what she meant to say. The fact of the matter is that she should not have said it. At the end of the day we're all responsible for our words and actions. I think it was a very inappropriate comment and I do not appreciate that our kids have to be around staff that view them in this way. I believe that the staff

member should be reprimanded.  I also believe there needs to be a public apology to these kids."
Ms. Breaux immediately and appropriately responded stating, "I want you to know that we love
and respect all students.  I will investigate this situation and get back to you."

13.

On the same date, Ms. Breaux contacted Ms. Pipsair to obtain information about what had
occurred since she was previously unaware of the situation.  Upon being confronted regarding her
racist behavior, Ms. Pipsair's tone was extremely loud and agitated.  Ms. Breaux tried to deescalate
the situation, explaining to her she did not contact Ms. Pipsair in order to argue, but rather, to
gather information regarding the situation.

14.

As opposed to the conciliatory and appropriate response of Ms. Breaux, Ms. Pipsair
responded to Ms. Shaw's email by accusing the children of plotting to antagonize a teacher.
Instead of taking any responsibility for her actions, she responded by stating, "The teachers are
tired of parents not answering the phone when they call with concerns or simply not getting the
support they need from parents."  She stated, "I will not apologize for trying to bring to light and
fix the problems that are bringing our students down, our teachers, our school, and the potential
future of Belle Rose community in general, which will be guided by these students when they
become adults."

15.

Needless to say, Ms. Shaw was not pleased with Ms. Pipsair's response and on Thursday,
October 25, 2018, wrote an email stating, "Generally when someone is sorry they apologize and
that's it.  There are no buts, and honestly what I read here is a bunch of buts.  I am fully aware of
all that you have mentioned in your response.  However, at the end of the day, the staff are the

adults and whether y'all accept it or not y'all are the 'role models.'  No, our children may not be perfect or even close to it, but as the adults you must set the standard."

16.

Showing her usual lack of discipline, and exhibiting poor judgment, minutes thereafter Ms. Pipsair continued to escalate the matter.  Ms. Pipsair wrote, "I'm sorry you see it that way.  I will not continue to discuss this back and forth behind a computer, but if you feel like the conversation should continue, please call me tomorrow."

17.

Even prior to having the opportunity to conduct and complete her investigation into the matter, Mr. Couvillion came to Ms. Breaux's office and demanded to know why Ms. Breaux was supporting the parents as opposed to his white friend, Ms. Pipsair. Ms. Breaux appropriately responded by stating she was not supporting the parent over Ms. Pipsair but was doing her job as an educator. Mr. Couvillion indicated that he became aware that there was a meeting held off-campus between an African-American teacher, Johnisha Harris, and community members to discuss Ms. Pipsair's conduct. Mr. Couvillion insinuated that Ms. Breaux knew about the meeting or had "inside knowledge" because she is an African American. Mr. Couvillion told Ms. Breaux that she should know what happened at the meeting facilitated by Ms. Harris and that Ms. Breaux "should get rid of her." Mr. Couvillion gave Ms. Breaux a direct order to terminate Ms. Harris. The only thing Mr. Couvillion failed to discuss was the matter of Ms. Pipsair's racist comments.

18.

Next Ms. Breaux reached out to her supervisor, Jessica Thibodeaux, for guidance. Everyone was in agreement that they would meet with the parent of the student who had emailed Ms. Breaux and Ms. Pipsair regarding the racist comments.  Thereafter, on Saturday, October 27,

2018, Ms. Pipsair texted Ms. Thibodeaux, Ms. Blanchard and Ms. Breaux about a Facebook post authored by another African American parent, Karon Holmes, regarding the incident. Ms. Breaux responded to Ms. Pipsair that they would work through the situation together and tried to comfort her by giving her an example of something she had previously experienced. Ms. Breaux explained to her that some words are culturally sensitive. Ms. Pipsair agreed to apologize to the whole school via intercom but Ms. Breaux recommended that she apologized only to the students involved. Together, they agreed to visit the classroom of the affected students, but Ms. Pipsair did so alone, not waiting for Ms. Breaux to attend as they had previously agreed.

19.

On Monday, October 29, 2018, Ms. Thibodeaux, Ms. Pipsair and Ms. Breaux met with Ms. Holmes. The parent indicated that her child came home asking what is a "ghetto savage thug." Ms. Pipsair responded by stating she was only describing a behavior and not the student directly. Ms. Pipsair tried to justify her statement, but the parent wanted a sincere apology. Ms. Breaux asked the parent to take down her Facebook post and help promote the school through its past positive actions. After Ms. Breaux was successful in calming down Ms. Holmes, she agreed to take down her Facebook post. Unfortunately, Ms. Pipsair responded stating, "I'm sorry what do you want. Do you want to crucify me in front of the school and lose my job?" The parent responded, "No, I want a sincere apology." The parent stated that she would go to the School Board after the meeting, and Ms. Breaux indicated that Ms. Thibodeaux was present as a representative of the School Board. Nonetheless, Ms. Holmes justifiably walked out. Thereafter, Ms. Thibodeaux and Ms. Breaux spoke to Ms. Pipsair regarding the inadequacy and inappropriateness of her response to the parent.

20.

On Wednesday, October 31, 2018, Ms. Breaux prepared a Written Reprimand Form outlining future actions which included that Ms. Pipsair would need to create a positive communication environment with the adults and children associated with Belle Rose Middle School. Additionally, Ms. Pipsair was instructed to use calming tones when speaking to students and use Crisis Prevention Institute ("CPI") strategies to deescalate student behaviors. Additionally, Ms. Breaux recommended that Ms. Pipsair participate in extracurricular activities to help develop relationships with the Belle Rose community.

21.

After daring to reprimand a Caucasian subordinate employee for calling a group of African-American children "ghetto savage thugs", Ms. Breaux became the target of Jeremy Couvillion's retaliation. As previously referenced, even before Ms. Breaux's investigation in the matter was complete, Mr. Couvillion came to Ms. Breaux's office and demanded to know why Ms. Breaux was supporting the parents as opposed to his white friend.

22.

After Ms. Breaux had the audacity to issue a Written Reprimand Form to Ms. Pipsair, Mr. Couvillion and the School Board's retaliation against Ms. Breaux continued to escalate. It began with an evaluation given to Ms. Breaux by Jessica Thibodeaux on February 1, 2019, covering the time period from August 8, 2018 through December 20, 2018. The evaluation, which should have been provided in December, was filled with inaccurate and distorted information. It was clear that the information contained within the evaluation did not come directly from Ms. Thibodeaux but was being provided to her by someone within the school, presumably Ms. Pipsair. The information could not have come from Ms. Thibodeaux, because Ms. Thibodeaux rarely directly observed Ms.

Breaux.  Ms. Breaux never had prior notice of the criticisms contained within the evaluation or the opportunity to correct her performance, to the extent that any of the criticisms had merit, which they did not. One theme that remained constant throughout the evaluation, was that Ms. Thibodeaux was critical of Ms. Breaux's relationship with Ms. Pipsair. The evaluation is replete with examples of Ms. Thibodeaux criticizing Ms. Breaux for her failure to involve or allow Ms. Pipsair greater influence in the school. For example, as it relates to *Domain: 2 - School Culture*, Ms. Thibodeaux wrote, "it is crucial that the principal takes an active role in ... supporting the assistant principal with the initiatives she develops with classroom teachers. Often times **principal has to be reminded to serve … assistant**". Ms. Thibodeaux continued that Ms. Breaux "showed little effort to take work off [Ms. Pipsair] so that she can further support classroom teachers with instruction." As it relates to *Domain: 3 Instruction*, Ms. Thibodeaux was critical of Ms. Breaux for not allowing Ms. Pipsair to take the lead as she met with teachers and assisted them with Student Learning Targets ("SLT's"). Specifically, she stated, "Principal must allow assistant who is stronger with instruction to take the lead in this area and she must fully support her". During the evaluation, Ms Thibodeaux criticized Ms. Breaux for not terminating Ms. Harris for daring to meet with the community regarding Ms. Pipsair having called a group of special-needs children "ghetto savage thugs". Ms. Breaux was not given the opportunity to correct the inaccurate information contained within the evaluation despite the fact that it could have caused harm to her administrative license and did have a negative impact on Ms. Breaux's ability to renew her administrative contract for the 2019-2020 school year.

23.

It became clear to Ms. Breaux that she was being discriminated against and therefore, pursuant to the School Board's Complaints and Grievances Policy, on February 6, 2019, Ms. Breaux filed a grievance regarding her evaluation.

24.

The Assumption Parish School Board Complaints and Grievances policy allows any employee of the School Board to file a grievance and be assured freedom from restraint, interference, coercion, discrimination, or reprisal in presenting his/her appeal with respect to a personal grievance.

25.

Within her grievance, Ms. Breaux specifically stated, "I feel I am being discriminated against." The grievance was never acted upon by Mr. Couvillion or the School Board. Within her grievance, Ms. Breaux stated, she was "filing a grievance due to not being administered an employee evaluation in a fair, objective, inconsistent manner." Ms. Breaux concluded the introduction to her grievance stating, "Seeking equal treatment". Ms. Breaux accurately stated that prior to her evaluation, Ms. Thibodeaux had "never asked [Ms. Breaux] to do a self-reflection of [her] studies, conducted walk-throughs, given written feedback on [her] performance, or given [her] an action plan of goals that she had set for [Ms. Breaux] to achieve." Ms. Breaux pointed out that "Ms. Thibodeaux has visited the school only briefly and while on campus, spends most of her time speaking with the assistant principal [Ms. Pipsair]." Ms. Breaux stated, "I am not given the opportunity to sit with her and discuss my professional development or issues she is expressing in this evaluation." In the grievance, Ms. Breaux stated what was obvious, that her Assistant Principal, Ms. Pipsair, was unprofessional and was attempting to undermine her and her decisions.

She also reported an incident in which Ms. Pipsair instigated a physical confrontation between herself and another teacher and had to be physically restrained. In response to a criticism of Ms. Breaux, Ms. Thibodeaux related to an allegation of not allowing Ms. Pipsair to take the lead on Student Learning Targets, Ms. Breaux provided an example of where she allowed Ms. Pipsair's involvement in a specific project regarding Student Learning Targets (sometimes referred to as "SLT's"), and in response Ms. Pipsair had contacted supervisors at the School Board's central office without Ms. Breaux's knowledge. Ms. Breaux stated, "This is a recurring pattern she displays to make [me] seem incompetent." It is clear, that when Ms. Breaux did not allow Ms. Pipsair the ability to work freely and on projects she desired, Ms. Breaux would be criticized. It is also clear that Ms. Breaux would be criticized when she relied upon Ms. Pipsair to complete the work to which she was assigned. Ms. Breaux could not tell her white subordinate what to do and could not tell her what not to do.

26.

On February 6, 2019, Ms. Breaux transmitted her grievance to Jeremy Couvillion. Mr. Couvillion never took any action regarding the allegations contained therein. Ms. Breaux was never advised of any investigation into the wrongful conduct of Ms. Thibodeaux and the unfair and inaccurate evaluation she prepared. The only response she received was from Damion Buggage, the School Board's Director of Instruction. Instead of responding to any of the wrongful conduct Ms. Breaux outlined in her grievance, or for that matter acknowledging the allegations in any regard, Mr. Buggage further retaliated against Ms. Breaux by adding job duties and putting Ms. Breaux on a performance plan. The School Board's message to Ms. Breaux was clear. We will treat you however we want (i.e. discriminate against you on the basis of your race), and if you

dare to complain about it, we will further retaliate against you by giving you negative assessments and adding to your job duties.

27.

Thereafter, in an open and blatant act of retaliation against Ms. Breaux for daring to reprimand Ms. Pipsair for her racist behavior and her unapologetic response thereto, and challenging her evaluation, on May 2, 2019, Ms. Breaux received a Charge Violation Letter from Jeremy Couvillion. Ms. Breaux was called into a room and given the option to retire, resign or be terminated. Within the letter, Mr. Couvillion stated that he was contemplating disciplinary action against Ms. Breaux, up to and including the termination of her contract as Principal. The purported grounds included that Ms. Breaux had failed to meet the Overall Student Growth Rating for her students. Mr. Couvillion alleged that Belle Rose Middle School had shown "a significant decline" under the leadership of Ms. Breaux. Mr. Couvillion's allegations do not mirror reality. The truth is that Belle Rose Middle School was the only middle school in Assumption Parish that showed growth and only one of two schools within the whole Parish that showed growth. Therefore, the purported grounds for Ms. Breaux's termination were nothing but a pretext.

28.

Suffering from great emotional distress, Ms. Breaux left the school for the day. Ms. Breaux called members of the School Board and was told if she did not execute a Waiver of Right to Hearing and Consent of Disciplinary Action, she would be immediately terminated. Ms. Breaux was given 10 days from receipt of the Charge Violation Letter to provide her response. Knowing that Mr. Couvillion had already made up his mind and decided to terminate her from her position as Principal, Ms. Breaux without choice and under duress and coercion, resigned from her position on May 3, 2019.

29.

What was not stated in Mr. Couvillion's letter or in any subsequent communication between the parties is that there were other schools within the Parish whose scores had gone down equally or greater to that of Belle Rose Middle School that were not subject to the same high teacher turnover and understaffing, by way of example Labadieville Middle School had a greater decline in scoring than Belle Rose Middle School. The obvious reason for the disparate beneficial treatment afforded to Labadieville Middle School is that it has a white male principal, Corey Crochet. Only one thing clearly distinguished Labadieville Middle School from Belle Rose Middle School. Labadieville Middle School did not have an African-American principal. They had a Caucasian principal. What is clear, is that under Mr. Couvillion's control, white administrators are given opportunities and the benefit of the doubt that their African-American peers are not.

30.

Another thing that was clear under Mr. Couvillion's "leadership", is that if you are African-American, you better know your place and not dare to reprimand one of your white subordinates.

31.

The discrimination against Ms. Breaux culminated on June 30, 2019, when her Contract of Employment for Administrators was not renewed. Instead, another Caucasian, Niles Riche, was appointed to her position after being demoted from his prior position. Unlike Ms. Breaux, who did not receive the support she needed at Belle Rose Middle School, Ms. Breaux is serving as a full-time Assistant Principal at Belle Rose Middle School. Apparently, Mr. Riche requires and is afforded the support that his African-American predecessor was not. Additionally, for her efforts in causing the situation that existed last year at Belle Rose Middle School, namely using racial

habitats against special needs African-American children, Ms. Pipsair has been promoted to a position within the administration of the School Board.

32.

On February 28, 2020, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). A copy of the February 28, 2020, EEOC Charge of Discrimination, is attached hereto and made a part hereof as Exhibit "A".

33.

The EEOC issued a Notice of The Right to Sue on April 28, 2021, a copy of which is attached hereto and made a part hereof by reference as Exhibit "B".

34.

Plaintiff believes and therefore alleges that Defendant's decision to discharge her was in retaliation for her discipline in the form of a reprimand of her Caucasian subordinate, Nicole Pipsair, and in retaliation for filing of a grievance as it relates to her factually inaccurate evaluation in direct contravention of Assumption Parish School Board's policy and ultimately, as a result of Assumption Parish School Board and Jeremy Couvillion discriminating against her on the basis of her race in violation of federal law and the laws of the State of Louisiana.

### ***Damages***

35.

As a result of the actions set forth in this Complaint, Plaintiff has suffered extensive damages for which she is entitled to backpay, front pay, lost benefits, compensation for emotional distress, humiliation and anxiety, liquidated/punitive damages, and attorney's fees, and such other legal and equitable relief to which she may be entitled.

**Count I**
**Intentional Discrimination:**
**Title VII of the Civil Rights Act of 1964**
**42 USC § 2000(e), et seq.**

36.

Plaintiff reasserts each of the allegations set forth in Paragraphs 1-35.

37.

Plaintiff believes and therefore alleges that her work environment within the Assumption Parish Schools was permeated with racial hostility and, more specifically, at Belle Rose Middle School, and that even after her complaints, Defendants failed to take appropriate remedial action to remedy same.  Quite the opposite, they retaliated against Plaintiff. This constitutes intentional discrimination on the basis of race.

38.

In February 2019, Plaintiff gave notice to the Superintendent of Schools for the Assumption Parish Schools, Jeremy Couvillion, of the disparate treatment to which she was being subjected on the basis of her race, and no remedial action was taken.

39.

Defendants, who knew of the racially hostile work environment created by Nicole Pipsair, Jessica Thibodeaux and Jeremy Couvillion, and failed to take appropriate remedial action to remedy same, are liable to Plaintiff pursuant to Title VII of the Civil Rights Act of 1964, 42 USC § 2000(e), et seq., for all damages Plaintiff sustained, as set forth in Paragraph 35, hereinabove.

**Count II**
**Discrimination for Opposition to Unlawful Employment Practice:**
**Title VII of the Civil Rights Act of 1964**
**42 USC § 2000(e)-3**

40.

Plaintiff reasserts each of the allegations set forth in Paragraphs 1-35.

41.

Plaintiff believes and therefore alleges that Defendant terminated Plaintiff from her employment in whole or in part in retaliation for Plaintiff's complaints regarding the racially hostile work environment and racially disparate treatment to which she was subjected by her supervisor Jessica Thibodeaux and Superintendent Jeremy Couvillion.

42.

Defendant is liable to Plaintiff for its retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 USC § 2000(e)-(3), for all damages Plaintiff sustained, as set forth in Paragraph 35, hereinabove.

**Count III**
**Intentional Discrimination under Louisiana Law**
**LSA-R.S. 23:332, et seq.**

43.

Plaintiff reasserts each of her allegations set forth in Paragraphs 1-35.

44.

Additionally and/or alternatively, Defendant is liable to Plaintiff for intentional discrimination against her on the basis of race pursuant to LSA R.S. 23:332, et seq., by creating a racially hostile work environment, treating her in a racially disparate manner and failing to remedy same, and for all damages that Plaintiff has sustained as a result thereof, as set forth in Paragraph 35, hereinabove.

**Count IV**
**Breach of Employment Contract**
**La. C.C. Art. 1998**

45.

Plaintiff reasserts each of her allegations set forth in Paragraphs 1-35.

46.

Additionally and/or alternatively, Defendant is liable to Plaintiff for its breach of contract of the terms of Plaintiff's employment with Defendant and, more specifically, Defendant's failure to renew her contract pursuant to Article VIII which provides that the contract be renewed for a 2 year. Unless the superintendent recommends against a new contract based on an evaluation of the contractee as provided for in R.S. 17: 391.5, or unless failure to offer a new contract is based on a cause sufficient to support a mid-contract termination, i.e., where the contractee is found to be incompetent or inefficient or is found to have failed to fulfill the terms and performance objectives of the contract.

47.

Here, any purported finding of incompetence or inefficiency or a failure to fulfill the terms of the performance objectives of the contract, is based upon the discrimination on the basis of race as outlined in Paragraphs 1 through 35 above and in retaliation for Plaintiff's opposition to Defendants' unlawful employment practices and Defendants are liable to Plaintiff for her nonpecuniary loss pursuant to La. C.C. Art. 1998, and for all damages that Plaintiff has sustained as a result thereof, as set forth in Paragraph 35, hereinabove.

**Count V**
**Constructive Discharge**

48.

Plaintiff reasserts each of her allegations set forth in Paragraphs 1-35.

49.

Solely in the alternative and out of an abundance of caution, as Plaintiff believes and has no doubt that she was terminated from her employment with the Defendant, due to the fact that Defendant alleged as a defense to Plaintiff's EEOC claim that Plaintiff waived a right to hearing and consented to disciplinary action, Plaintiff alleges constructive-discharge as it relates to her employment with Defendant and, specifically, when Plaintiff executed the Waiver of Right to Hearing and Consent to Disciplinary Action, she did so because her working conditions had become so intolerable due to the racial harassment and disparate treatment to which she was subjected that a reasonable person in Plaintiff's position would have felt compelled to do so in the face of such circumstances and was coerced to execute the paperwork in order to obtain a job as an Assistant Principal for the following school year.

## Count VI
## Intentional Interference with Business/Contractual Relations

50.

Plaintiff reasserts each of her allegations set forth in Paragraphs 1-35.

51.

Plaintiff believes and therefore alleges that Defendant, Jeremy Couvillion, intentionally encouraged and permitted the Assumption Parish School Board that Ms. Breaux deserved to be removed from her position as Principal of the Belle Rose Middle School and that Ms. Breaux's contract should not be renewed based upon an evaluation as provided for in R.S. 17: 391.5 or was based on a cause sufficient to support a mid-contract termination, i.e., where Ms. Breaux was found

to be incompetent or inefficient or was found to have failed to fulfill the terms and performance objectives of her contract, which will be revealed in discovery to be patently false and untrue.

52.

In addition to Defendants' Intentional Discrimination in violation of Title VII of the Civil Rights Act of 1964, Discrimination for Opposition to Unlawful Employment Practice in violation of Title VII of the Civil Rights Act of 1964, Intentional Discrimination under Louisiana Law LSA-R.S. 23:332, et seq., the breach of Ms. Breaux's Contract of Employment for Administrators, constructive discharge of Ms. Breaux from her position as Principal of Belle Rose Middle School, Jeremy Couvillion intentionally interfered with Plaintiff's employment relationship with the Assumption Parish School Board, caused her termination and is directly responsible for the Assumption Parish School Board's wrongful nonrenewal of her Contract of Employment for Administrators. As such, Mr. George is liable to Plaintiff for the damages she has sustained and continues to sustain as a result of the loss of her employment pursuant to her Contract of Employment for Administrators, including but not limited to damage to her reputation, and economic damages, relating thereto, including loss of income and benefits, and emotional distress, anxiety, humiliation, and loss of enjoyment of life.

**<u>Trial by Jury</u>**

53.

Plaintiff is entitled to and requests a trial by jury.

**WHEREFORE**, premises considered, Plaintiff, Iris Breaux, prays that this matter be set for trial by jury, and that after due proceedings, there be judgment herein in her favor and against Defendants, Assumption Parish School Board and Jeremy Couvillion, individually and in his

former capacity as Superintendent of the Assumption Parish School Board and that there be judgment issued against Defendants for an award individually, jointly, and/or in solido-, for all damages sustained by Plaintiff, including back pay, front pay, lost benefits, compensation for emotional distress, humiliation and anxiety, compensation for her monetary losses, liquidated/punitive damages, damages pursuant to breach of contract, damages pursuant to intentional interference with business/contractual relations, attorney fees, interest on all sums due, costs, and all such other legal and equitable relief to which she may be entitled.

Respectfully submitted,


  /s/Douglas R. Kraus
Douglas R. Kraus, La. Bar. #26668, T.A.
Susannah C. McKinney, La. Bar #24349
Chelsea Brener Cusimano, La. Bar #34857
**Brener & Kraus, LLC**
3640 Magazine Street
New Orleans, Louisiana 70115
Tel. (504) 302-7802
Fax (504) 304-4759
*dkraus@brenerlawfirm.com*
*smckinney@brenerlawfirm.com*
*ccusimano@brenerlawfirm.com*
*Attorneys for Plaintiff, Iris Breaux*