UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IRIS BREAUX | CIVIL ACTION |
| VERSUS | NO. 21-1405 |
| ASSUMPTION PARISH SCHOOL BOARD, *et al.* | SECTION M (3) |

## ORDER & REASONS

Before the Court is the motion of defendants Assumption Parish School Board ("the School Board") and Jeremy Couvillion (together, "Defendants") to dismiss.[1] Plaintiff Iris Breaux opposes the motion.[2] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons denying the motion in part and granting the motion in part.

I. **BACKGROUND**

This case arises from alleged race discrimination that Breaux, an African-American female, faced during her tenure as principal of Bell Rose Middle School.[3] Breaux had contracted to serve as principal through the 2018-2019 school year.[4] During that school year, Breaux reprimanded a white subordinate employee for calling a group of African-American children "ghetto savage thugs."[5] Breaux alleges that after issuing the reprimand, both the School Board and Couvillion, the superintendent of Assumption Parish Schools, retaliated against her, leading to the wrongful

---

[1] R. Doc. 9.
[2] R. Doc. 12.
[3] R. Doc. 1 at 4-10.
[4] *See id.* at 3 (discussing the circumstances of Breaux's employment throughout the 2018-2019 school year), 9 (alleging that inaccurate information in a performance assessment had a negative impact on her ability to renew her "administrative contract" for the 2019-2020 school year).
[5] *Id.* at 8.

nonrenewal of her contract on June 30, 2019.[6] Their retaliation, says Breaux, included the message that "if you are African American, you better know your place and not dare to reprimand one of your white subordinates"; a negative performance assessment that did not "mirror reality"; additional job duties; and an ultimatum to her to "retire, resign, or be terminated."[7] Breaux alleges she knew that Couvillion had already made a decision to terminate her and, "without choice and under duress and coercion," she was forced to resign on May 3, 2019.[8]

Breaux asserts several claims against the School Board and Couvillion. Against the School Board and Couvillion in his official capacity as superintendent, she asserts claims for (1) racial discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); (2) retaliation for her opposition to unlawful employment practices in violation of Title VII; (3) racial discrimination in violation of Louisiana state law; (4) breach of her employment contract in violation of Louisiana state law; and (5) constructive discharge.[9] Against Couvillion in his individual capacity, she asserts a claim for "intentional interference with business/contractual relations."[10]

---

[6] *Id.* at 8, 13.
[7] *Id.* at 11-12.
[8] *Id.* at 12.
[9] R. Docs. 1 at 15-18; 12 at 2-4.
[10] R. Docs. 1 at 18-19; 12 at 4.

## II.     PENDING MOTION

In their motion, Defendants argue that the claim for breach of contract against the School Board[11] and all claims against Couvillion must be dismissed.[12] The breach-of-contract claim against the School Board must fail, say Defendants, because the School Board could not have breached a contract that Breaux "admittedly withdrew from of her own accord."[13] Further, Defendants argue that all claims against Couvillion in his official capacity must be dismissed as duplicative of the identical claims asserted against the School Board,[14] and that the one claim asserted against Couvillion in his individual capacity – the "intentional interference with business/contractual relations" claim – is barred by qualified and statutory immunity.[15]

In opposition, Breaux argues that she has pleaded enough facts to state a plausible claim for breach of contract against the School Board because she did not withdraw from the contract of

---

[11] R. Doc. 9 at 1. Defendants state that Breaux's complaint is unclear as to which claims she asserts against the School Board. *See* R. Doc. 9-1 at 11. They argue that only the claims against the School Board for breach of contract and intentional interference with contract should be dismissed. R. Doc. 9 at 2. In her opposition, Breaux clarifies that she asserts five claims against the School Board: (1) racial discrimination in violation of Title VII; (2) retaliation in violation of Title VII; (3) racial discrimination in violation of state law; (4) breach of her employment contract in violation of state law; and (5) constructive discharge. R. Doc. 12 at 2-4. Importantly, the only claim asserted against the School Board that Defendants move to dismiss is the breach-of-contract claim. *See* R. Docs. 9 at 2; 12 at 2-4 (clarifying that the intentional-interference-with-contract claim applied solely to Couvillion in his individual capacity). The Court will only analyze Defendants' argument on the breach-of-contract claim, as Breaux explains that the intentional-interference-with-contract claim is not asserted against the School Board. *See* R. Doc. 12 at 4. In an abundance of caution, to the extent the complaint can be read to allege such a claim, it is DISMISSED WITH PREJUDICE based on Breaux's clarification.

[12] R. Doc. 9 at 1-2.

[13] R. Doc. 9-1 at 11.

[14] *Id.* at 3. In her opposition, Breaux clarifies that she asserts five claims against Couvillion in his official capacity – namely, (1) racial discrimination in violation of Title VII; (2) retaliation in violation of Title VII; (3) racial discrimination in violation of state law; (4) breach of her employment contract in violation of state law; and (5) constructive discharge – but none of these is asserted against him in his individual capacity. R. Doc. 12 at 2-4.

[15] R. Doc. 9-1 at 12. In her opposition, Breaux clarifies that she asserts only one claim against Couvillion in his individual capacity, namely, the "intentional interference with business/contractual relations" claim. R. Doc. 12 at 4. Defendants, however, read the complaint to assert multiple theories of liability against Couvillion in his individual capacity, including but not limited to the "intentional interference with business/contractual relations" claim. *See* R. Doc. 9-1 at 3-4, 7-8. Because the "intentional interference with business/contractual relations" claim is the only claim Breaux now says she seeks to pursue against Couvillion in his individual capacity, the Court will solely address Defendants' arguments as to that claim. To the extent the complaint can be read to assert the other claims against Couvillion in his individual capacity, they are hereby DISMISSED WITH PREJUDICE based on Breaux's clarification.

her own accord; instead, she was constructively discharged when given the option to resign, retire, or be terminated.[16] Breaux does not oppose Defendants' argument that her claims against Couvillion in his official capacity must be dismissed as duplicative of her similar claims against the School Board.[17] Finally, Breaux argues that her claim against Couvillion in his individual capacity for "intentional interference with business/contractual relations" is not subject to qualified immunity, as Couvillion "cannot assert that he has qualified immunity to intentionally infringe upon [] Breaux's constitutional right to earn a livelihood, pursue her career as principal within the Assumption Parish School System, and enter into contracts in [] furtherance thereof."[18]

### III. LAW & ANALYSIS

#### A. Rule 12(b)(6) Standard

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The statement of the claim must "'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A pleading does not comply with Rule 8 if it offers "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557) (alteration omitted).

---

[16] R. Doc. 12 at 16-17.
[17] *See generally* R. Doc. 12.
[18] *Id.* at 18.

4

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on the face of the complaint "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausibility does not equate to probability, but rather "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Thus, if the facts pleaded in the complaint "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration omitted).

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court employs the two-pronged approach utilized in *Twombly*. The court "can choose to begin by identifying pleadings that, because they are no more than conclusions [unsupported by factual allegations], are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "'[The] task, then, is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.'" *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 385 (5th Cir. 2017) (quoting *Doe ex rel. Magee v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir.

2012)).  Motions to dismiss are disfavored and rarely granted.  *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).  A court's review of a Rule 12(b)(6) motion to dismiss "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)).

### B. Claim Against the School Board

Of the claims asserted against the School Board, Defendants move to dismiss the claim for breach of contract.[19]  Under Louisiana law, a plaintiff must prove three essential elements to prevail on a breach-of-contract claim: "(1) the parties consented to be bound through offer and acceptance; (2) the obligor failed to perform a conventional obligation (the breach); and (3) the failure to perform resulted in damages to the obligee." *Jones v. Adm'rs of Tulane Educ. Fund*, 2021 WL 5097769, at *2 (E.D. La. Sept. 29, 2021) (citing La. Civ. Code arts. 1927, 1994).  Both the School Board and Breaux agree that a contract existed between them, such that they consented to be bound through offer and acceptance.[20]  The parties disagree, however, on whether that contract was breached.[21]  Defendants argue that no breach occurred because Breaux "admittedly withdrew from [the contract] of her own accord."[22]  In contrast, Breaux contends that she did not voluntarily withdraw but was constructively discharged by the School Board as a result of (1) the intolerable work conditions stemming from racial harassment and disparate treatment; and (2) the

---

[19] R. Doc. 9-1 at 10.
[20] *See* R. Docs. 9-1 at 1 (Defendants acknowledging Breaux's administrative contract); 1 at 17 (Breaux noting that Defendants failed to renew her contract).
[21] *Compare* R. Doc. 9-1 at 10-11, *with* R. Doc. 12 at 16-17.
[22] R. Doc. 9-1 at 11.

6

ultimatum to retire, resign, or be terminated.[23]  Here, accepting the facts in her complaint as true, Breaux has stated a claim for breach of contract that is plausible on its face.  *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  If the School Board did constructively discharge Breaux, such that her resignation was involuntary and she was wrongfully terminated prior to her contract's expiration, then there is more than a "sheer possibility" that a breach occurred.  "[A] resignation may still constitute an adverse employment action," and likely a breach, "'if the resignation qualifies as a constructive discharge.'"  *Ricks v. Friends of WWOZ, Inc.*, 2019 WL 4671582, at *6 (E.D. La. Sept. 25, 2019) (quoting *Brown v. Liberty Mut. Grp., Inc.*, 616 F. App'x 654, 657 (5th Cir. 2015)).  Therefore, Breaux has pleaded sufficient factual matter to state a claim against the School Board for breach of contract, and Defendants' motion to dismiss such claim is DENIED.

### C. Claims Against Couvillion in His Official Capacity

Breaux asserts the same five claims against Couvillion in his official capacity as she does against the School Board: (1) racial discrimination in violation of Title VII; (2) retaliation in violation of Title VII; (3) racial discrimination in violation of state law; (4) breach of contract; and (5) constructive discharge.[24]  Defendants argue that all claims against Couvillion in his official capacity must be dismissed as duplicative of those asserted against the School Board.[25]  Breaux does not oppose this argument.[26]  Accordingly, because Defendants' motion to dismiss all official-capacity claims against Couvillion is unopposed and dismissal is warranted under applicable law,[27]

---

[23] R. Doc. 12 at 16-17.
[24] R. Docs. 1 at 15-18; 12 at 2-4.
[25] R. Doc. 9-1 at 3.
[26] *See generally* R. Doc. 12.
[27] The claims Breaux asserts against Couvillion in his official capacity and against the School Board are identical.  *See id.* at 2-4.  The Supreme Court, the Fifth Circuit, and multiple sections of this Court have recognized that "'[o]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Eltalawy v. Lubbock Indep. Sch. Dist.*, 816 F. App'x 958, 962 (5th Cir. 2020) (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991)); *see, e.g., DeCossas v. St. Tammany Par. Sch. Bd.*, 2017 WL 3971248, at *14 (E.D.

7

the motion is GRANTED such that Breaux's claims against Couvillion in his official capacity are DISMISSED WITH PREJUDICE.

### D. Claim Against Couvillion in His Individual Capacity

Breaux asserts one claim against Couvillion in his individual capacity: "intentional interference with business/contractual relations."[28] In *9 to 5 Fashions, Inc. v. Spurney*, 538 So. 2d

---

La. Sept. 8, 2017) (citing *Burge v. Par. of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999), and *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)); *Notariano v. Tangipahoa Par. Sch. Bd.*, 266 F. Supp. 3d 919, 928 (E.D. La. 2017). "If the claims against an official in his official capacity seek identical relief as claims against a governmental entity, the official capacity claims may be dismissed as duplicative." *Notariano*, 266 F. Supp. 3d at 928 (dismissing claims against individual defendants in their official capacities because claims were duplicative of those asserted against a school board) (citing *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001)); *see also DeCossas*, 2017 WL 3971248, at *14 (finding that a district court "may properly dismiss claims against municipal officers in their official capacities when they are duplicative of claims against the governmental entities themselves") (citing *Castro Romero*). Here, because the claims asserted against Couvillion in his official capacity are identical to those asserted against the School Board, they are duplicative and must be DISMISSED WITH PREJUDICE.

[28] Although Breaux titles her claim as "intentional interference with business/contractual relations," the substance of Breaux's allegations assert a claim for tortious interference with contract, and not one for intentional interference with business relations. "[T]he nature of a claim is determined from the substance of the allegations, not the name it is given." *B & S Equip. Co. v. Cent. States Underwater Contracting, Inc.*, 2020 WL 1953614, at *4 (E.D. La. Apr. 23, 2020). Even if the claim could be read as one for interference with business relations, however, such a claim would fail as a matter of law.

"A plaintiff bringing a claim for tortious interference with business must ultimately show by a preponderance of the evidence that the defendant improperly influenced others not to deal with the plaintiff. Significantly, it is not enough to allege that a defendant's actions affected plaintiff's business interests; the plaintiff must allege that the defendant actually prevented the plaintiff from dealing with a third party." *Bogues v. La. Energy Consultants, Inc.*, 71 So. 3d 1128, 1134-35 (La. App. 2011) (quotations and citations omitted). The Fifth Circuit has recently enumerated the elements of a claim for tortious interference with business relations: "To succeed, a plaintiff must prove by a preponderance of the evidence that the defendant: (1) 'acted with actual malice'; (2) 'actually prevented the plaintiff from dealing with a third party'; (3) acted 'improperly,' i.e., not to 'protect legitimate interests'; and (4) caused damage to the plaintiff." *IberiaBank v. Broussard*, 907 F.3d 826, 840-41 (5th Cir. 2018) (citations and footnote omitted). Where there are "'no factual allegations describing any conversation between a particular defendant and any particular entity with whom plaintiff was attempting to confect a business relationship,'" there is no claim for tortious interference with business relations. *Acad. of Allergy & Asthma in Primary Care v. La. Health Serv. & Indem. Co.*, 2020 WL 4050243, at *12 (E.D. La. July 17, 2020) (quoting *Bogues*, 71 So. 3d at 1135) (alterations omitted). Further, "this tort applies only to *prospective* business relationships, rather than existing ones: 'Tortious interference is based on the principle that the right to influence others not to *enter into* business relationships is not absolute.'" *Id.* (emphasis in original) (quoting *Bogues*, 71 So. 3d at 1134). "This tort parallels the common-law tort of intentional interference with prospective contractual relations, except that Louisiana limits its applicability by requiring a showing of actual malice." *Id.* "Thus, allowing [p]laintiffs to base this claim on allegations of interference with existing contracts would be to allow them to make an end run around the strict requirements for tortious interference with contract under Louisiana law." *Id.*

In her complaint, Breaux alleges that "Couvillion intentionally interfered with [her] employment relationship with the Assumption Parish School Board, caused her termination and is directly responsible for the Assumption Parish School Board's wrongful nonrenewal of her Contract of Employment for Administrators." R. Doc. 1 at 19. These allegations are insufficient to state a claim for intentional interference with business relations. First, Breaux fails to allege that Couvillion "actually prevented the plaintiff from dealing with a third party." *See IberiaBank*, 907 F.3d at 841. Second, Breaux alleges that Couvillion interfered with her existing employment relationship with the

8

228, 232-34 (La. 1989), the Louisiana supreme court recognized an "extremely limited" cause of action for intentional interference with contract. *CFP New Orleans, LLC v. Orleans Par. Jud. Dist. Ct. Bldg. Comm'n*, 2017 WL 3917108, at *11 (E.D. La. Sept. 7, 2017) (quoting *Petrohawk Props., L.P. v. Chesapeake La., L.P,* 689 F.3d 380, 394-96 (5th Cir. 2012)). "[T]o prevail on a claim for intentional interference with contract, a plaintiff must establish: '(1) the existence of a contract or a legally protected interest between the plaintiff and the corporation; (2) the corporate officer's knowledge of the contract; (3) the officer's intentional inducement or causation of the corporation to breach the contract or his intentional rendition of its performance impossible or more burdensome; (4) absence of justification on the part of the officer; (5) causation of damages to the plaintiff by the breach of contract or difficulty of its performance brought about by the officer.'" *Lips v. Everest Sys., LLC*, 2021 WL 76404, at *3 (E.D. La. Jan. 8, 2021) (quoting *Spurney*, 538 So. 2d at 234). Importantly, the action must be against an officer or director of a private corporation. *CFP New Orleans, LLC*, 2017 WL 3917108, at *12; *see also Bradford v. Jackson Par. Pol'y Jury*, 2019 WL 1966139, at *9 (W.D. La. Apr. 17, 2019) ("Louisiana limits a claim for tortious interference with contract to cases against officers of *private* corporations.") (emphasis in original), *adopted*, 2019 WL 1966131 (W.D. La. May 2, 2019).

Breaux fails to state a claim for intentional interference with contractual relations as a matter of law. Courts in the Fifth Circuit have uniformly "determined that Louisiana law does not permit a cause of action for tortious interference with a contract against anyone other than an officer of a corporation." *Ashford v. Aeroframe Servs., LLC*, 2021 WL 2389381, at *14 (W.D. La. Apr. 29, 2021) (citing *Huffmaster v. Exxon Co.*, 170 F.3d 499, 504 (5th Cir. 1999); *Roy Supply Co. v. Capital One Fin. Corp.*, 2016 WL 4362156 (E.D. La. Aug. 16, 2016); *Int'l Env't Servs.,*

---

School Board, not a prospective business relationship with a third party. *See* R. Doc. 1 at 19. Thus, Breaux fails to state a plausible claim for intentional interference with business relations under Louisiana law.

*Inc. v. Maxum Indus., LLC*, 2014 WL 4629662 (W.D. La. Sept. 15, 2014); *Beta Tech., Inc. v. State Indus. Prods. Corp.*, 2008 WL 11351462 (M.D. La. Sept. 24, 2008); *Hibernia Cmty. Dev. Corp. v. U.S.E. Cmty. Servs. Gp., Inc.*, 166 F. Supp. 2d 511, 514 (E.D. La. 2001)). Here, Breaux names no corporate officer as defendant. The School Board is not a private corporation, but a governmental entity. *See City of Baker Sch. Bd. v. E. Baton Rouge Par. Sch. Bd.*, 754 So. 2d 291, 293 (La. App. 2000) ("School boards are agencies of the state."). Couvillion, as superintendent of public schools, is not an officer of a private corporation, and Breaux has no claim for tortious interference with contract against him. *See CFP New Orleans, LLC*, 2017 WL 3917108, at *12 (holding that tortious-interference-with-contract claim was not actionable against state judge); *City of Alexandria v. Cleco Corp.*, 735 F. Supp. 2d 448, 457-60 (W.D. La. 2010) (refusing to extend *Spurney* to a tortious-interference claim asserted against public officials, like a mayor and a city attorney). Therefore, Defendants' motion to dismiss Breaux's claim for intentional interference with contract is GRANTED, and the claim against Couvillion in his individual capacity is DISMISSED WITH PREJUDICE as a matter of law.

### IV. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Defendants' motion to dismiss (R. Doc. 9) is DENIED in part and GRANTED in part. The motion is DENIED with respect to the breach-of-contract claim against the School Board. The motion is GRANTED with respect to the claims against Couvillion in his official capacity for (1) racial discrimination in violation of Title VII; (2) retaliation in violation of Title VII; (3) racial discrimination in violation of state law; (4) breach of contract; and (5) constructive discharge, which are DISMISSED WITH PREJUDICE. The motion is GRANTED

with respect to the claim against Couvillion in his individual capacity for intentional interference with business/contract relations, which is DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this 30th day of November, 2021.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE